[Crim. No. 456.    Second Appellate District.—February 9, 1916.]

## THE PEOPLE, Respondent, v. JOHN STEPHENS, Appellant.

CRIMINAL LAW—CREDIBILITY OF WITNESSES—QUESTION FOR JURY.—Under section 19 of article VI of the constitution, the credibility of witnesses and all questions of fact are matters exclusively for the determination of the jury, which is the exclusive judge of the credibility of witnesses and the effect and value of the evidence addressed to it.

ID. — ASSAULT WITH INTENT TO MURDER — DEFENSE OF ALIBI — SUFFICIENCY OF EVIDENCE—QUESTION FOR JURY.—In a prosecution for the crime of assault with intent to commit murder, wherein the defense is based upon an *alibi* supported solely by the testimony of the defendant, it is for the jury to say whether such testimony should be believed, as against the testimony of witnesses whom it was sought to impeach.

ID.—EVIDENCE AGAINST DEFENDANT—SUFFICIENCY TO SUPPORT VERDICT—DECISION OF JURY—WHEN CONCLUSIVE.—If the evidence which bears against the defendant, considered by itself, and without regard to conflicting evidence, is sufficient to support the verdict, the question ceases to be one of law—of which alone the appellate court has jurisdiction—and becomes one of fact upon which the decision of the jury and the trial court is final and conclusive.

ID.—RULINGS ON EVIDENCE—LACK OF PREJUDICE.—In this prosecution for the crime of assault with intent to murder, it is held that the

numerous assignments of error predicated upon rulings upon the admission and rejection of evidence related to trivial matters, and even though the rulings should be considered erroneous, no substantial rights of the defendant were prejudiced thereby.

ID. — PRESUMPTION AS TO INTENT — ERRONEOUS INSTRUCTION — CONVICTION OF LESSER OFFENSE—LACK OF PREJUDICE.—An instruction to the effect that, in the absence of evidence to the contrary, the "natural presumption must prevail" that one who assails another violently with a dangerous weapon, likely to kill, and which does in fact injure the party assailed, intended death or great bodily harm, is erroneous, as the existence of such an intent is a matter to be proved by the prosecution, but such instruction is not prejudicially erroneous where the defendant was convicted of a lesser offense.

ID.—CREDIBILITY OF WITNESSES—APPEAL.—It is not the function of appellate courts to determine the credibility of witnesses and weigh their testimony, nor is it the rule in this state that prejudice must be presumed upon the showing of error.

ID.—TAKING OF INSTRUCTIONS TO JURY-ROOM—LACK OF PREJUDICE.—The taking by the jury to the jury-room for reference, in considering their verdict, the instructions, which showed modifications of some of the requested instructions by erasures, is not prejudicial where there is nothing in the changes made in the instructions given which could possibly have affected the minds of the jurors in reaching a verdict.

APPEAL from a judgment of the Superior Court of Imperial County, and from an order denying a new trial. Franklin J. Cole, Judge.

The facts are stated in the opinion of the court.

O. O. Willson, and W. F. Frazier, for Appellant.

U. S. Webb, Attorney-General, Robert M. Clarke, Deputy Attorney-General, and Roberto M. Camarillo, for Respondent.

SHAW, J.—Upon an information charging him with the crime of assault with intent to commit murder, defendant was convicted of the crime of assault with a deadly weapon.

He appeals from the judgment pronounced that he be punished by imprisonment in the state prison for the term of one year and required to pay a fine of one thousand dollars.

Numerous errors are assigned upon which appellant asks for a reversal, chief among which it is contended that there was no evidence to support the verdict. It appears that Mr.

Bosworth, the owner of an apricot orchard within the city limits of El Centro, having discovered that someone was stealing his fruit at night, employed one Bernard Fox to guard the orchard in an effort to apprehend the person engaged in pilfering. After dark on the evening of June 2d, Fox, who was armed with a shotgun, and while on duty as such guard, saw a person enter the orchard and proceed to pick fruit from the trees; whereupon he approached him and, while engaged in conversation, the party started to cross the fence inclosing the orchard, at which time Bosworth came upon the scene and, using a flashlight, looked at the person so apprehended by Fox. Bosworth accompanied Fox and his prisoner to a certain point on the boundary of the orchard, and instructed Fox to take the man to the jail, distant a half mile or more, and deliver him into custody of the officers. Fox proceeded with his prisoner, who walked some eight or ten feet in front of him, to a point described in the record as the corner of 6th and Olive streets, when the man so arrested turned and with a revolver shot Fox through the body. Defendant was arrested, charged with the offense, and upon trial based his defense upon an *alibi* supported solely by his own testimony. In addition to the fact that Bosworth, who had used the flashlight in looking at the man, positively identified defendant as the one found in the orchard and apprehended by Fox, the latter testified unequivocally that he was the man who, at 6th and Olive streets, shot him while proceeding on the way to the jail. Other than this direct testimony identifying defendant as the man who did the shooting was evidence of circumstances the existence of which, if by the jury deemed established, rendered it difficult, if not impossible, to reconcile the same upon any theory other than as pointing to defendant as the perpetrator of the crime. Had defendant offered no evidence in support of the alleged *alibi*, no question could arise as to the sufficiency of the evidence offered on behalf of the prosecution to convict. Since he offered evidence tending to support such defense, it became solely a question for the jury to weigh the same and determine the truth thereof. Under section 19 of article VI of the constitution, the credibility of witnesses and all questions of fact are matters exclusively for the determination of the jury, which, as we have repeatedly said, are the exclusive judges of the credibility of witnesses and the effect and value of the

evidence addressed to them. In *People* v. *Emerson*, 130 Cal. 562, [62 Pac. 1069], it is said: "If the evidence which bears against the defendant, considered by itself, and without regard to conflicting evidence, is sufficient to support the verdict, the question ceases to be one of law—of which alone this court has jurisdiction—and becomes one of fact upon which the decision of the jury and the trial court is final and conclusive." Conceding that defendant's own story exculpates him, nevertheless it was for the jury to say whether or not that story should be believed, as against the testimony of witnesses whom it was sought to impeach. (*People* v. *Rongo*, 169 Cal. 71, [145 Pac. 1017].) It is apparent from the verdict rendered that the jury did not believe the testimony of defendant. The fact, as stated, that the jury deliberated twenty-three hours, and that much evidence was introduced tending to show the good character of defendant (presumably the jury gave full consideration to such evidence), have no bearing upon the question presented. Many instances are on record where men of previous good character, as shown by the evidence, have been convicted of the commission of crimes where the jury have deliberated a much longer time.

Numerous assignments of error are predicated upon rulings of the court upon the admission and rejection of evidence, nearly all of which relate to trivial matters, and even should the rulings be considered erroneous, under no possible theory could the substantial rights of appellant have been prejudiced thereby. Illustrative of this is the fact that in searching defendant's room therefor, the officers making the arrest found a gun, the ownership of which was admitted by defendant. The testimony showed that when found all of the chambers were loaded, in which condition it was produced before the jury. The court ordered the cartridges to be removed therefrom, which being done, it was offered and received in evidence over defendant's objection that it was not in the condition in which it was when found. Another instance: A witness, testifying to the fact that she saw only one person pass along the sidewalk in front of her house at a given time, was asked: "If more than one passed, you would have seen him?" to which, the objection interposed being overruled, she answered: "I would think so. I was looking right out on the sidewalk to see who might come by." Several witnesses testified to the appearance of the chambers of

the gun when it was first found, such testimony being to the effect that all but one chamber were rusty and full of dust, the other showing it had been freshly used and emitted an odor of the explosion of fresh powder. Another witness, the city marshal, testified that he found the gun fully loaded, and came to the conclusion from examining the gun that it had been fired recently, one chamber had been fired. There was no objection to this question; whereupon he was asked upon what he based his conclusion, to which he replied, without objection: "Upon the appearance of the cylinder and the inside of the cylinder compared with the others." Whereupon a motion made to strike out the answer as being a conclusion, was denied. Conceding it to have been a conclusion, how could it—in view of the fact that the condition and appearance of the chambers as to dust and rust in all but one chamber was fully shown by other witnesses—have affected the verdict?

Appellant next insists that the court erred in the giving of instructions, and likewise erred in refusing instructions requested by defendant. The court instructed the jury that one must be presumed to intend to do that which he voluntarily and willfully does and intend the natural and probable consequences of his acts, and hence when one person assails another violently with a dangerous weapon, likely to kill, and which does in fact injure the party assailed, the natural presumption is that such assailant intended death or great bodily harm, and, in the absence of evidence to the contrary, such presumption must prevail. There was no error in so doing. The fact that the defense was based upon an *alibi* did not render the instruction improper, for the reason that, if the *alibi* was not sustained, the *corpus delicti* being established, the jury should in arriving at its verdict, if they found that defendant fired the shot, take into consideration the intent with which the act was committed. The court modified some of the instructions requested by defendant by erasing certain parts thereof. These instructions, it appears, were taken to the jury-room for reference in considering their verdict. Appellant claims that such act was prejudicial to his rights, since it acquainted the jury with the parts stricken out by the court. The contention is without merit, there being nothing in the changes made in the instructions given which could

possibly have affected the minds of the jurors in reaching a verdict. It is likewise insisted that the court erred in refusing to give certain instructions requested by defendant. The subject of the instruction so refused, however, appears to have been fully and fairly covered by instructions elsewhere given.

Counsel for appellant in presenting his case have apparently labored under the belief, not only that it is the function of this court on appeal to determine the credibility of witnesses and weigh their testimony, but also that the rule prevailing in some jurisdictions, namely, that prejudice must be presumed upon the showing of error, applies in this state. Such, however, is not the case. Prejudice to the substantial rights of one on trial does not necessarily follow from the mere commission of error. (Pen. Code, secs. 1404, 1258, and 960.) And to this must be added the effect of section 4½ of article VI of the constitution, which prohibits the court from reversing a judgment, etc., unless the error complained of has resulted in a miscarriage of justice. If attorneys representing defendants would bear these facts in mind, no doubt it would be the means of restricting appeals to cases possessing other merit than the stereotyped objection that the evidence (though shown to be sharply conflicting) is insufficient to justify the verdict; thereby saving both to themselves and the court much unnecessary labor.

The trial of the case was conducted in a manner calculated to protect defendant in every right to which he was justly entitled. The instructions given to the jury were clear, full, and absolutely fair to him, and the jury, notwithstanding the evidence was ample to show that defendant had made an assault with the intent to kill, considerately rendered a verdict for the lesser offense, accompanied with a recommendation for mercy, which action, upon the record, we conclude must have been due to the testimony of numerous witnesses to the previous good character of defendant, coupled with the trivial value of the subject for the taking of which he was apprehended by his victim.

The judgment and order appealed from are affirmed.

Conrey, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 6, 1916, and the following opinion then rendered thereon:

ANGELLOTTI, C. J.—In denying the application for a hearing in this court after decision by the district court of appeal of the second appellate district, we deem it proper to say that we are not prepared to give our assent to the statement that there was no error in giving an instruction to the effect that *in the absence of evidence to the contrary,* the "natural presumption" that one who assails another violently with a dangerous weapon, likely to kill, and which does in fact injure the party assailed, intended death or great bodily harm *must prevail.* The charge here was assault with intent to commit murder, a charge as to which a specific intent to kill was an essential element. The existence of such intent was a matter to be proved by the prosecution, and while the jury were *at liberty to infer* such intent from such facts and circumstances as were stated in the instruction, it cannot be held to be a correct proposition of *law* to say substantially that they *must so* infer. But defendant was convicted of the lesser offense of assault with a deadly weapon, an offense involving no specific intent to kill or to do great bodily harm. (Pen. Code, sec. 245; *People* v. *Turner,* 65 Cal. 540, [4 Pac. 553]; *People* v. *Mize,* 80 Cal. 41, [22 Pac. 80].) Under these circumstances, it cannot be held that defendant was prejudiced by the instruction. (See *People* v. *Gordon,* 88 Cal. 422, [26 Pac. 502].)

Sloss, J., Melvin, J., Lawlor, J., and Shaw, J., concurred.