[Crim. No. 6719.   Second Dist., Div. Two.   Jan. 21, 1960.]

THE PEOPLE, Respondent, v. JACK WATSON, Appellant.

Bernard S. Jefferson for Appellant.

Stanley Mosk, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

FOX, P. J.—Defendant was convicted by a jury of violating the Dangerous Weapons Control Law (Pen. Code, § 12021).* He has appealed from the judgment and the order denying his motion for a new trial.

At approximately 5 p. m., on April 16, 1958, Officer Deemer and his partner, Officer Fimple, went to 747 East Adams, in Los Angeles, where they found defendant in bed in a room on the second floor. Upon pulling the covers back, they discovered a fully loaded automatic with a shell in the chamber and a loaded .38 revolver lying approximately an inch from his hand. Beside the guns was a handkerchief, folded and tied, that contained some 10 .38 shells. Defendant told Officer

---

*Penal Code, section 12021, provides, in part: "Any person who . . . has been convicted of a felony under the laws . . . of the State of California . . . who owns or has in his possession or under his custody or control any pistol, revolver, or other firearm capable of being concealed upon the person is guilty of a public offense. . . ."

Deemer that "these guns belonged to him"; that "he had been having some trouble with a guy"; and that he kept the guns "for his protection." Defendant made similar statements to Officer Fimple a few minutes after his arrest, in the police car in front of the house. Defendant also stated that he obtained the guns through a gambling transaction. It was stipulated that defendant had been convicted of grand theft, a felony, in December, 1950, in Alameda County.

At the trial, defendant denied possession of, or any knowledge of, the guns, and denied making the statements to which the officers testified. Although defendant owned the house, he was not living there, his residence being at 1608 South Wilton Place. Defendant's story was that he had driven over to 747 East Adams around 9:30 that morning and played poker for a while; that during the course of the morning he had eaten some barbecued pork spareribs which caused him to become sick and to vomit; that he fell over the table, and that the next thing he remembered was when the officers awakened him. He claims to have been suffering from ulcers for approximately seven years and that his doctor had advised him not to eat such food.

Brent E. Beaumont testified that he had lived at 747 East Adams for several months and had been the sole occupant of the room where defendant was found in bed; that upon defendant's becoming ill, the witness and two other men assisted defendant to the witness's room and put him to bed; that the guns in question belonged to the witness; that he kept them loaded under his pillow for he intended to take them with him for sport shooting when he went to the mountains on a week end or on a fishing trip.

The testimony of two other witnesses supported defendant's story as to where he resided and that he became ill and was put to bed at the place where he was arrested.

In seeking a reversal defendant contends that (1) the evidence is insufficient to sustain the judgment of conviction; (2) the court committed prejudicial error in connection with the cross-examination of witness Beaumont, and (3) that it also erred in permitting Officer Deemer to give certain testimony in rebuttal. We find no merit in any of these contentions.

[■■] In passing on the sufficiency of the evidence to sustain the conviction we must assume in favor of the verdict the existence of every fact which the jury could reasonably deduce from the evidence. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) [■■] When thus tested it is manifest that

there is ample evidence to sustain the judgment. The testimony of Officer Deemer as to what he observed when he pulled back the covers on the bed and defendant's statements to him and Officer Fimple amply support the implied finding that defendant owned or at least had possession of the guns found in the bed with him.

Defendant points out that the evidence is insufficient to sustain a judgment of conviction "where such evidence establishes at best speculation or suspicion or guesswork as to defendant's guilt." He seems to argue that the evidence in this case falls in that category. To this end he emphasizes the testimony of his witnesses in support of his story. In making this type of approach defendant overlooks his position before a reviewing court. In effect, he is suggesting that this court reevaluate the credibility of the witnesses and reweigh the evidence. This, of course, we have no power to do. (*People* v. *Gould,* 111 Cal.App.2d 1, 8 [243 P.2d 809].) Illustrative of defendant's failure to recognize these principles is his contention that the testimony of the officer relative to defendant's admission when arrested that the guns belonged to him was "nullified" by defendant's later denial in court. This would seem to mean that his denial was more worthy of belief. Whether the account he gave of the presence of the guns in bed with him was true or reasonable was for the jury to determine. (*People* v. *Luchetti,* 119 Cal. 501, 505 [51 P. 707].) It was also for the jury to decide whether the testimony of defendant's witnesses was worthy of belief. (*People* v. *Von Benson,* 38 Cal.App.2d 431, 434 [101 P.2d 527].)

Defendant complains about two questions that his witness Beaumont was asked on cross-examination. The first of these was: "Do you have any idea of what happens or how safe it is to have a shell in the chamber of an automatic?" Defendant contends this question called for the witness' opinion on an irrevclant and immaterial matter and thus should not have been allowed. The court overruled the objection on the theory that it went to witness' credibility. The ruling was correct. The witness had given a most unusual explanation for having these guns in his bed—that he intended to use them for sport shooting when he went on a week-end trip to the mountains or on a fishing trip. However, up to that time he had never taken either of them out of the house, nor had he ever fired either gun. The question tended to probe the unlikelihood of the witness' story as well as test his credibility by exploring his knowledge of the characteristics of

the automatic which he claimed to own. The authorities agree that wide latitude should be allowed in cross-examination for the purpose of testing credibility. There was clearly no abuse of the court's discretion in its ruling.

The other question that was asked this witness about which defendant complains was: ''Why did you have two of them there?'' The question refers to the witness' having the two loaded guns in his bed. This question was also permissible for the purpose of probing the truthfulness of the witness' story that both of the guns found in bed with defendant belonged to the witness and that he intended to use them on weekends for sport shooting though he had never made any such use of either of them.

■ Finally, defendant contends that the trial court improperly allowed Officer Deemer to testify in rebuttal that a .22 rifle, with some ammunition, was found in a closet in the room where the arrest was made. He asserts that this evidence was offered to impeach by way of contradiction his witness Beaumont but contends it has no such tendency and therefore it was prejudicial error to admit it.

Beaumont had testified that he had been the sole occupant of the room for some months and that he owned the two guns found in bed with defendant. He was asked to enumerate the things that he kept in his room. He only mentioned ''a couple or three changes of clothes'' in addition to the guns. The purpose of his testimony was to show that the two guns found in the bed were his because he had been the sole occupant of the room for quite some time. The inference sought to be thus developed was that whatever was in the room (outside of its furnishings) belonged to Beaumont. But when asked to state what he kept in his room, he failed to mention a .22 rifle found in the closet. This omission was not without significance. Officer Deemer's testimony was therefore proper rebuttal.

The judgment and order are affirmed.

Ashburn, J., and Herndon, J., concurred.